LEHAN, Judge.
Defendant appeals his conviction for possession of a short-barreled shotgun. He contends the evidence did not establish the statutory requisite that the weapon was operable or could readily be made operable. We disagree and affirm.
Section 790.221(1), Florida Statutes (1989), provides, “It is unlawful for any person to own or to have in his care, custody, possession, or control any short-barreled rifle, short-barreled shotgun, or machine gun which is, or may readily be made, operable; but this section shall not apply to antique firearms.” The evidence did not establish that the weapon was operable at the time it was found in defendant’s possession. Therefore the question we address, and decide in the affirmative, is whether the evidence established that the weapon could “readily be made operable.”
The term “may readily be made operable” is not statutorily defined, and we have not found any Florida cases discussing its meaning. Therefore, we look to a normal and usual meaning of the term, especially of the word “readily.” Webster’s Third New International Dictionary includes within its definition of “readily” as being “without much difficulty: with facility: easily ...” We adopt that definition and conclude that the term is used in the statute to describe a relative lack of difficulty necessary to make the weapon operable.
The evidence established that the weapon in defendant’s possession could readily be made operable within the foregoing definition. The state offered the testimony of the police officer charged with maintaining the police armory. He testified that when he received the weapon it was so rusty that it was “frozen closed.” However, after he applied penetrating oil, he was able to break the weapon open, load it and fire it. Thus, making the weapon operable appeared to involve no special knowledge or great expense.
*517 We recognize that the record does not indicate how long the oil must have remained on the weapon before it could be broken open, only that several days passed between the time the weapon was oiled and the time it was opened. But even if it be assumed that the oil had to have been left on the weapon several days, we would still conclude that the weapon could “readily be made operable.” Its frozen condition was only temporary and did not alter its character as the type of weapon we conclude the legislature intended to describe. See United States v. Smith, 477 F.2d 399 (8th Cir.1973) (gun which was welded closed could be “readily restored to shoot” within meaning of National Firearms Act even though process of restoration required an eight-hour working day in a properly equipped machine shop); United States v. Catanzaro, 368 F.Supp. 450 (D.Conn.1973) (gun “may be readily restored to fire” within meaning of National Firearms Act when its restoration was with “relative ease” through replacement of missing and broken parts which took approximately one hour, even though process of locating parts involved consulting a standard firearms publication and knowledgeable persons in the firearms field and then, after ascertaining that the manufacturer had gone out of business, locating parts in another manufacturer’s inventory). Compare United States v. Seven Miscellaneous Firearms, 503 F.Supp. 565 (D.D.C.1980) (weapons could not be “readily restored to fire” when restoration required master gunsmith in a gun shop and $65,000 worth of equipment and tools).
Affirmed.
RYDER, A.C.J., and THREADGILL, J., concur.